Patrick **PELLERIN, Individually and as Parent and Natural Guardian of Shawn Pellerin, Plaintiff,**

v.

**NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, Defendant.**

**Nationwide Mutual Fire Insurance Company, Third-party plaintiff,**

v.

**Vickie Pellerin, Third-party defendant.**

**No. 1:00–CV–1646.**

United States District Court, N.D. New York.

July 3, 2002.

---

Girvin & Ferlazzo, P.C., Attorneys for Plaintiff & Third Party Defendant, Albany, NY, Peter D. Murray, Of Counsel.

Hodgson Russ, LLP, Attorneys for Defendant, Albany, NY, Elizabeth Dailey McManus, Of Counsel.

Hodgson Russ LLP, Attorneys for Defendant, New York City, Patrick M. Tomovic, Of Counsel.

## MEMORANDUM–DECISION and ORDER

HURD, District Judge.

## I. INTRODUCTION

Plaintiff Patrick Pellerin ("Pellerin" or "plaintiff") filed an action in New York State Supreme Court on January 28, 2000, seeking a declaration that defendant Nationwide Mutual Fire Insurance Company ("Nationwide" or "defendant") is obligated by an insurance policy contract to defend he and his son Shawn Pellerin ("Shawn") in an action pending in Saratoga County Supreme Court entitled *Daniel Marchi & Dana Marchi v. Patrick Pellerin, Individually & as Parent & Natural Guardian of Shawn Pellerin* (hereinafter "Marchi lawsuit"). Nationwide received a copy of the Complaint on October 12, 2000, and filed a Notice of Removal in this court on October 26, 2000. Thereafter Nationwide filed an Answer denying the material allegations of the complaint and asserting various defenses. With the permission of the court, on September 19, 2001, Nationwide filed a Third-party Complaint naming Vickie Pellerin ("Mrs. Pellerin") as a third-party defendant, seeking a declaration that it owes no obligation to defend Mrs. Pellerin, or anyone, in the Marchi lawsuit. Mrs. Pellerin answered denying the material allegations of the Third-party Complaint.

Nationwide moves for summary judgment solely based upon the failure of plaintiff and Mrs. Pellerin ("the Pellerins") to meet the policy's notice requirements. Nationwide expressly reserved the right to assert other coverage defenses, such as the exclusion for intentional acts, should its notice requirement argument be rejected. The Pellerins oppose and cross move for summary judgment, contending that notice was sufficient as a matter of law and that Nationwide's disclaimer of coverage breached the insurance contract because the intentional act exclusion does not apply. Nationwide opposes the cross motion. Oral argument was heard on April 26, 2002, in Albany, New York. Decision was reserved.

## II. *FACTS*

The Pellerins' son Shawn attended the BOCES Maywood School. Shawn had attention deficit hyperactivity disorder as well as behavioral and academic difficulties, which the programs at Maywood are designed to address. Shawn began his schooling at Maywood in the ninth grade, at age 14, in 1998. Daniel Marchi ("Marchi") was Shawn's home room and social studies teacher. On December 4, 1998, Shawn started acting out in class, so Marchi and a teacher's assistant took him to the time out room, a small room where students sat alone for 15 minutes to regain control of themselves. When a student was in the time out room, a teacher or teacher's assistant observed through a window in the door, which was never locked. The room was empty of furnishings. After Shawn was put in the time out room, he began kicking at the door. Marchi and the teacher's assistant entered the room to attempt to calm Shawn down. The teacher's assistant was to stay in the room with Shawn, while Marchi started to exit the room and close the door. Shawn executed a side kick, striking Marchi in the groin. Marchi and the teacher's assistant restrained Shawn for 30 minutes, kept him in time out for 15 minutes more, then took him to the in-school suspension room. BOCES called Mrs. Pellerin to tell her that Shawn had an incident and was being suspended for five days. Mrs. Pellerin called her husband, who went to BOCES to pick Shawn up.

When Shawn returned to school after serving the suspension, he had a substitute teacher. Marchi did not return to school that semester. Marchi had been seriously hurt by the kick and eventually required two surgeries. In February 1999 a scheduled progress report was sent to the Pellerins, which stated that as a result of the December 4, 1998, incident the teacher suffered a disabling injury. There was no conference between the school and Shawn's parents regarding the incident. The Pellerins did not discuss the incident with him. Toward the end of the school year one of Shawn's classmates told him that Marchi was in the hospital. Shawn didn't know the reason for the hospitalization, and never mentioned it to his parents.

At the end of August 1999 the Pellerins were served with the Marchi lawsuit alleging that he sustained serious disabling injuries as a result of the December 4, 1998, incident when Shawn kicked him. The Pellerins contacted their attorney, who submitted or directed the Pellerins to submit a notice of claim to Nationwide, their homeowners insurance company. Nationwide investigated and disclaimed coverage for lack of timely notice and exclusion for an intentional act. The policy provided for personal liability coverage as follows:

> We will pay damages an insured is legally obligated to pay due to an occurrence resulting from negligent personal acts or negligence arising out of the ownership, maintenance of use of real or personal property. We will provide a defense at

our expense by counsel of our choice. We may investigate and settle any claim or suit.

This coverage is excess over other valid and collectible insurance. It does not apply to insurance written as excess over the applicable limits of liability.

(Keller Aff. Bates No. N00063.) However, the policy excludes payments where bodily injury is "caused intentionally by or at the direction of an insured, including willful acts the result of which the insured knows or ought to know will follow from the insured's conduct." *Id.* Bates No. N00065. The policy sets forth notice requirements:

Duties after Loss. In case of a loss, you will perform the following duties. You will cooperate with us in seeing that these duties are performed.

a) Give notice to us or our agent as soon as practicable setting forth: (1) identity of the policy and insured. (2) time, place, and facts of the accident or occurrence. (3) names and addresses of the claimants and witnesses.

b) Forward to us every document relating to the accident or occurrence.

c) At our request, assist in: (1) making settlement. (2) enforcing a right of contribution or indemnity against a person or entity who may be liable to an insured. (3) conducting suits, and attending hearings and trials. (4) giving evidence and asking witnesses to attend. . . .

e) The insured shall not, except at the insured's own cost, voluntarily make a payment, assume an obligation, or incur an expense other than for first aid to others at the time of the bodily injury.

*Id.* Bates No. N00068.

## III. *DISCUSSION*

### A. *Summary Judgment Standard*

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Richardson v. New York State Dep't of Correctional Serv.,* 180 F.3d 426, 436 (2d Cir.1999). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Richardson,* 180 F.3d at 436; *Project Release v. Prevost,* 722 F.2d 960, 968 (2d Cir.1983). Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56; *Liberty Lobby, Inc.,* 477 U.S. at 250, 106 S.Ct. 2505; *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348. At that point the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. at 586, 106 S.Ct. 1348. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.,* 477 U.S. at 248–49, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348.

### B. *Notice Requirement*

Nationwide's sole ground in seeking summary judgment is that, given the undisputed facts as set forth above, notice was unreasonable as a matter of law. On

the other hand, the Pellerins argue in opposition and in support of their cross motion that notice was sufficient as a matter of law.

 The parties' insurance contract requires that "[i]n case of a loss," the policyholder must give notice to the insurer "as soon as practicable." (Keller Aff. Bates No. N00068.) Under New York law, in order to be timely under such a provision, notice must be given "when the circumstances known to the insured at that time would have suggested to a reasonable person the possibility of a claim." *Commercial Union Ins. Co. v. Int'l Flavors & Fragrances, Inc.*, 822 F.2d 267, 272 (2d Cir.1987). Such a notice requirement is a condition precedent both to the duty to defend and the duty to indemnify. *Id.* at 273. However, where "the insured either lacked knowledge of the occurrence or had a reasonable belief of nonliability," failure to provide timely notice is excused. *Id.* at 271.

Nationwide argues that many undisputed facts demonstrate the unreasonableness of the notice. Both of the Pellerins and Shawn had knowledge of the incident, both on the day of its occurrence and about sixty days later upon receipt of Shawn's Progress Report that noted that the incident resulted in disabling injuries to the teacher. Defendant contends that failure to make inquiry to the school regarding Marchi's condition after the incident was unreasonable, and it would have led to knowledge of a potential claim had inquiry been made. Nationwide also points to Shawn's knowledge of Marchi's prolonged absence from school, arguing that to any reasonable person this would suggest that the kick caused significant injuries that could result in a claim.

Defendant's argument fails to take into consideration other facts that, in the unique circumstances of this case, lead inevitably to the conclusion that notice was reasonable as a matter of law. Surrounding the incident itself, the Pellerins were notified by BOCES that an incident had occurred and that Shawn had been suspended. However, this was not the first disciplinary problem that Shawn had, so it was not unusual for Mrs. Pellerin to receive such a call. Immediately after the incident, such as while Shawn was on suspension, the school, which had all the details of the incident and Marchi's injuries, made no attempt to contact the Pellerins to discuss the details nor to relay to them the seriousness of the injuries Shawn had caused. When the school did contact them about Marchi's injuries approximately sixty days later, it was merely by a handwritten note on Shawn's progress report. No phone call was made to highlight the incident and resultant injuries, and no separate letter or notice was sent to the Pellerins. No attempt was made to conference with the Pellerins to discuss discipline after the incident or the serious nature of Marchi's injury.

Shawn's knowledge of Marchi's absence from school does not support an inference that his parents, the Pellerins, should have from that knowledge divined that the incident involved a potential claim against their homeowners insurance policy. First, Shawn was a fourteen year-old child with behavioral and academic difficulties. It is completely unreasonable to presume that he would connect Marchi's absence with the incident of December 4, let alone convey any such deduction to his parents. Second, it is completely reasonable that Shawn did not make any connection with the December 4, incident when he became aware, several months later, that Marchi had been hospitalized. Third, given Shawn's behavioral problems and repeated difficulties at school, it is not unreasonable that the Pellerins made no additional in-

quiry to the school after the incident. Fourth, while a kick in the groin should not be taken lightly, it is not the type of incident from which one would ordinarily expect a serious, disabling injury to result. Finally, even if the Pellerins had somehow deduced that the incident resulted in a severe injury, it was reasonable for them, as laypersons with no legal training, to believe that they had no liability and that there was no potential claim involved, since most people are covered by workers compensation for injuries occurring in the course of their employment. Thus, it was not unreasonable for the Pellerins to be unaware that "a loss" to them had occurred until the lawsuit was filed against them.

Based upon the undisputed facts in this case, the notice given by the Pellerins to Nationwide at the time they were served with the Marchi lawsuit was reasonable as a matter of law. This reasonable notice satisfied the condition precedent of the policy thereby entitling the Pellerins to defense and indemnity pursuant to the terms of the contract.

### C. *Intentional Conduct Exclusion*

■ The Pellerins move for summary judgment on the issue of the policy exclusion for intentional acts. According to the policy, personal liability coverage does not extend to injury caused by intentional, willful acts where the injury was foreseeable. (Keller Aff. Bates No. N00065.) Defendant reserved the intentional act exclusion defense in its moving papers. The Pellerins' cross motion for summary judgment recites undisputed facts in support. To withstand such a motion, Nationwide must set forth facts to establish that a genuine issue remains for trial. *See* Fed. R.Civ.P. 56; *Liberty Lobby, Inc.,* 477 U.S. at 250, 106 S.Ct. 2505; *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348.

Nationwide fails to set forth any such facts. Rather, it merely states that *its* motion is based solely upon notice and reiterates its reservation of the intentional act exclusion. This is insufficient as a matter of law to withstand the Pellerins' cross-motion for summary judgment on this issue. *See* Fed.R.Civ.P. 56; L.R. 7.1.

### IV. *CONCLUSION*

The notice given by the Pellerins to Nationwide immediately upon service of the Marchi lawsuit was reasonable as a matter of law. Nationwide failed to set forth any facts showing that a genuine issue remains for trial regarding the intentional act exclusion; therefore, the Pellerins are entitled to summary judgment on this issue.

Accordingly, it is

ORDERED that

1. The defendant Nationwide Mutual Fire Insurance Company's motion for summary judgment is DENIED;

2. The cross motion for summary judgment brought by plaintiff Patrick Pellerin and third-party defendant Vickie Pellerin is GRANTED; and

3. The defendant Nationwide Mutual Fire Insurance Company is directed to take over defense of the Saratoga County Supreme Court action entitled *Daniel Marchi & Dana Marchi v. Patrick Pellerin, Individually & as Parent & Natural Guardian of Shawn Pellerin* within thirty days of the date of this Order and to thereafter indemnify the Pellerins pursuant to the terms of the insurance policy contract.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.